IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROSALEE A. IMEL,                                    Civ. No. 6:11-CV-06302-AA

           Plaintiff,                          OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

_____

Alan Stuart Graf, P.C.
316 Second Rd.
Summertown, Tennessee 38483
      Attorney for Plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97201-2902

1     - OPINION AND ORDER

Jeffrey R. McClain
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
      Attorneys for Defendant

AIKEN, Chief Judge:

      Plaintiff Rosalee Imel brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.  For reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

      In April 2004, plaintiff filed applications for DIB and SSI alleging a disability onset date of March 26, 2004.  Tr. 181, 201.  The Commissioner denied plaintiff's application initially and upon reconsideration.  Tr. 193.  On March 20, 2007 an administrative law judge (ALJ) issued a decision finding plaintiff not disabled within the meaning of the Act.  Tr. 193.  Plaintiff applied again on May 9, 2007 for DIB and SSI, alleging a disability onset date of March 21, 2007.  Tr. 11, 180.  After her applications were denied, a hearing took place on May 17, 2011 at which plaintiff and a vocational expert appeared and testified before the ALJ.  Tr. 37-97.  On June 15, 2010, the ALJ issued a decision again finding plaintiff not disabled.  Tr. 28. Plaintiff filed a timely appeal, and on July 29, 2010, the Appeals Council denied her request for review, rendering the ALJ's decision the final decision of the Commissioner.  Tr. 1, 6.  Plaintiff now seeks judicial review.

      Born in 1968, plaintiff was forty-one years old at the time of the ALJ's final decision.  Tr.

58. Plaintiff has a tenth-grade education and a GED, with past work experience as a retail sales clerk, a hotel clerk, and a laundry aide/housekeeper. Tr. 58, 61, 81. Plaintiff alleges disability due to pain in her legs and back, numbness in hands and feet, fatigue, and difficulty dealing with "confrontational situations." Tr. 61-63. Plaintiff bases these claims on multiple diagnoses she has received, including fibromyalgia, diabetes, and degenerative disc disease. Tr. 13-15, 374, 398, 1157-58.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards, and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner]'s conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). While questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner, any negative credibility findings must be supported by findings on the record and supported by substantial evidence. Waters v. Gardener, 452 F.2d 855, 858 n.7 (9th Cir. 1971); Cequerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

///

///

3        - OPINION AND ORDER

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

A five-step process exists to determine disability under the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987), 20 C.F. R.§ 404.1520.

At step one, the ALJ found that plaintiff had not performed substantial gainful activity during the period of alleged disability. Id. § 404.1520(b); Tr. 13. At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine; fibromyalgia; obesity; diabetes mellitus with complications; pain disorder; depressive disorder, NOS; and dependent personality features. Id. §§ 404.1520(c), 416.920(c); Tr. 13. However, at step three the ALJ found that plaintiff's impairments did not meet or medically equal one of the number of listed impairments deemed so severe as to preclude gainful activity. Id. §§ 404.1520(d), 416.920(d); Tr. 13.

At step four, the ALJ found that plaintiff had a residual functional capacity (RFC) to perform sedentary work. Id. §§ 404.1520(e), 416.920(e), 404.1567(1), 416.967(a); see also, id.; Tr. 17. Specifically, the ALJ found that plaintiff was capable of "lifting and carrying of 10 pounds occasionally and less than 10 pounds frequently, standing and walking at least two hours of an eight hour workday and sitting about six hours of an eight hour workday, except she can never climb ladders, ropes and scaffolds and only occasionally stoop, kneel, crouch, crawl and climb ramps and

4     - OPINION AND ORDER

stairs.  She can frequently balance." Tr. 17.  The ALJ went on to conclude: "the claimant can

perform unskilled work of simple, repetitive tasks with simple instructions that do not require more

than occasional contact with the general public, coworkers or supervisors.  She would perform best

with verbal rather than written instructions" Tr. 17.  Based on this assessment, the ALJ found that

plaintiff's RFC precluded performance of her past relevant work and proceeded to step five. Id. §§

404.1520(f), 416.920(f), 404.1565, 416.965; See also Tackett v. Apfel,180 F.3d 1094, 1099; Tr. 26.

     At step five, the burden shifts to the Commissioner to show that the claimant can perform

other jobs that exist in the national economy, taking into consideration the claimant's RFC, age,

education, and work experience. Yuckert, 482 U.S. at 141- 142; Tackett, 180 F.3d at 1099; 20 C.F.R.

§§ 404.1520(f), 416.920(f).  Based on the RFC assessment and the testimony of a vocational expert,

the ALJ found that plaintiff could perform a range of unskilled sedentary work including stuffer,

assembler, and touch up screener, and that such positions exist in significant numbers in the national

economy.  Id.§§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 27.  Therefore, the ALJ found

plaintiff not disabled within the meaning of the Act.  Id. §§  404.1520(g), 416.920(g); Tr. 27-28.

## DISCUSSION

     Plaintiff argues that the Commissioner's decision should be reversed and remanded for the

payment of benefits.  Plaintiff contends that the ALJ erred in finding her subjective complaints not

credible and in rejecting the opinions of plaintiff's treating physician and examining psychologists

without articulating legally sufficient reasons.

### A.  Credibility Determination

     Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discount the

credibility of the plaintiff.  Plaintiff maintains that her complaints and testimony should be accepted

as true, rendering her disabled under the Act.

At the administrative hearing, plaintiff testified that she was unable to work full time due to pain in her legs and back, numbness in her hands and feet, difficulty in dealing with "confrontation situations," easily tiring, and difficulty sleeping. Tr. 61-64. The ALJ considered the plaintiff's testimony in light of a report from the Cooperative Disability Investigations Unit (CDIU), which was completed at the request of Disability Determination Services in order to evaluate a suspected exaggeration of plaintiff's functional limitations. Tr. 19, 1162. The ALJ found that plaintiff's complaints were not fully credible, citing inconsistencies between her reported symptoms and the record, the CDIU report, and medical evidence. Tr. 18-26.

When a plaintiff produces objective medical evidence of an impairment that reasonably could be expected to produce some degree of the alleged symptoms, "the ALJ can reject the claimant's testimony about the severity of [the] symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. Or. 1996); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ credibility findings must be "sufficiently specific to permit court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). When making a credibility evaluation, the ALJ may consider objective medical evidence together with:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment; and (3) the claimant's daily activities... The ALJ must also consider... the claimant's work record and the observations of treating and examining physicians and other third parties...

Smolen, 80 F.3d at 1284. Further, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may look to the medical record for inconsistencies. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999).

Here, I find that the ALJ provided legally sufficient reasons to support his credibility finding. The ALJ noted that plaintiff's statements about her physical limitations and social interactions were inconsistent with other evidence of record, including medical records. Tr. 17-22. In the function report that plaintiff submitted in June 2007, she indicated that there was no place she went on a regular basis. Tr. 209. Elsewhere in the report she stated she went to breakfast two days a week, played bingo one to two times a week, and traveled with her father for a four-hour shopping trip to Salem once a month. Tr. 212. These statements also conflict with the Claimant Fatigue Questionnaire that plaintiff submitted along with the function report, stating that she can only sit for one to two hours before she needs to rest. Tr. 219.

The ALJ also noted that plaintiff's "inconsistent reasons for not following treatment in addition to expressing an understanding the need for treatment suggests a willful resolution to not follow medical advice." Tr. 21. Plaintiff responds that this "admonition" on behalf of the ALJ is irrelevant, adding "it is a poor practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" Nguyen v. Chater, 100 F.3d 1462, (9th Cir. 1996); Regennitter v. Comm'r 166 F.3d 1294, 1299-1300 (9th Cir. Or. 1999) ("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"(quoting Blankenship v. Bowen, 874 F.2d 1116 (6th Cir. 1989)); Pl. Brief at 21. Plaintiff mischaracterizes the ALJ's finding as a type of reprimand, and her reliance on case law is misplaced. Both cases cited

7    - OPINION AND ORDER

by plaintiff hold that a claimant's failure to seek psychiatric treatment because of a mental condition or poverty should not be dispositive in determining the claimant's credibility. <u>Nguyen</u>, 100 F.3d at 1465; <u>Regennitter</u>, 166 F.3d at 1299. These cases are easily distinguished from this case. The ALJ found that plaintiff repeatedly sought non-psychiatric medical treatment, and yet willingly failed to heed the advice of her doctors to the point that they deemed her noncompliant. Tr. 364, 374-77, 425, 430, 439, 441, 448, 473, 927, 961, 1137. The ALJ further noted "after the last hearing level denial the claimant presented with multiple complaints, including fatigue and poor sleep, and expressed an understanding that she needed to address her medical problems yet she continued to fail to follow medical advice thereafter." Tr. 22, 362-383. Thus, the ALJ did not err in considering plaintiff's failure to follow medical advice. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284.

Further, and perhaps most significantly, the ALJ found that plaintiff's testimony stands in stark contrast to her activities and statements observed by the CDIU investigators. The CDIU report states that investigators observed plaintiff walk with a normal gait without any assistive devices, and exhibit no outward signs that she was in pain. Tr. 19, 1172. Plaintiff also showed no apparent anxiety or apprehension in dealing with the investigators, and stayed calm, alert, and well-oriented throughout the entirety of the interview. <u>Id</u>. She denied that she had any current medical problems, and told investigators that she drove daily, did her own shopping and banking, and played bingo at least once a week with a friend. Tr. 19, 1173. I reject plaintiff's argument that consideration of the CDIU report was improper, because "strict rules of evidence, applicable in the courtroom, are not to operate at social security hearings so as to bar the admission of evidence otherwise pertinent." <u>Richardson v. Perales</u>, 402 U.S. 389, 400 (1971). Moreover, the ALJ offered plaintiff notice and ample opportunity to comment on the CDIU evidence, and yet plaintiff did not exercise her qualified

8    - OPINION AND ORDER

regulatory right by requesting that the ALJ subpoena the investigators. 20 C.F.R § .404(950) (d)(1).

Plaintiff's due process rights were not violated. Richardson v. Perales, 402 U.S. 389, 404-05 (A

claimant who did not take advantage of the opportunity afforded him to request that a subpoena be

issued for a physician to appear at the hearing is precluded from complaining that he was denied the

rights of confrontation and cross-examination.)

Plaintiff essentially disagrees with the ALJ's interpretation of plaintiff's complaints and

emphasizes that they are not necessarily inconsistent with the record. However, "[w]hen the

evidence before the ALJ is subject to more than one rational interpretation, we must defer to the

ALJ's conclusion." Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. Or.

2004). Given that the ALJ's findings are clear, convincing, and supported by the record, I find no

error with the ALJ's credibility determination.

## B. Opinions of Medical Providers

Plaintiff next argues that the ALJ erred in rejecting the opinion of a treating physician and

examining psychologists. The determination of whether plaintiff can work or it disabled is a matter

reserved solely to the Commissioner, not to a treating physician:

> A treating physician's evaluation of a patient's ability to work may be useful or
> suggestive of useful information, but a treating physician ordinarily does not consult
> a vocational expert or have the expertise of one. An impairment is a purely medical
> condition. A disability is an administrative determination of how an impairment in
> relation to education, age, technological, economic, and social factors, affects ability
> to engage in gainful activity.

McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011)

At the same time, the medical opinion of a claimant's treating physician is entitled to "special

weight" because he or she "is employed to cure and has greater opportunity to know and observe the

patient as an individual." Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989) (citation omitted). Thus, the ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion with specific and legitimate reasons. Andrews, 53 F.3d at 1043. However, "the ALJ need not accept the opinion of any physican, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, a physician's opinion of disability based in large part on the claimant's self-reporting may be disregarded where those complaints have been "properly discounted." Morgan, 169 F.3d at 602 (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).

**1) Opinion of Dr. Bohlman**

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Bohlman, a treating physician. On March 3, 2010, Dr. Bohlman wrote a letter indicating that plaintiff's chronic pain and diabetes caused her such fatigue that she would require two to three naps during an eight-hour work day. Tr. 1177-79. He further opined that plaintiff "could be on her feet maybe 15 minutes at a time due to her neuropathy, fibromyalgia and spinal disease," and that plaintiff "could not complete more than two to three days at a job before needing to call in sick due to her symptoms." Tr. 1179. The ALJ rejected Dr. Bohlman's characterization of plaintiff's limitations, stating that it was not supported by the treatment records and was contradicted by his own treatment notes. Tr. 22. The ALJ also noted that Dr. Bohlman did not specialize in several applicable areas of plaintiff's impairments. Tr. 22.

I find no error in the ALJ's evaluation of Dr. Bohlman's opinion. As indicated by the ALJ, Dr. Bohlman cited no medical reports or findings to substantiate this assessment of plaintiff's ability to work. See Thomas, 278 F.3d at 957; Tr. 20-26, 1095-1151. Further, Dr. Bohlman's letter is inconsistent with plaintiff's treatment records. The most recent records from Dr. Bohlman indicate that plaintiff had controlled her blood sugars through much of 2009, which contrasts with his statement that her diabetes is uncontrolled. Tr. 1177-79. Although Dr. Bohlman suggested a surgical consultation for plaintiff's cervical spine impairment in response to plaintiff's complaints of pain, the ALJ noted that "it seems the claimant never followed through with this and the claimant did not complain of neck pain to Dr. Bohlman in the remainder of the record." Tr. 20, 1095-1151. The ALJ discussed this lack of compliance in following medical advice, stating "the inconsistent reasons for not following treatment in addition to expressing an understanding the need for treatment suggests a willful resolution to not follow medical advice." Tr. 21. The ALJ's consideration of Dr. Bohlman's opinion was sufficiently specific and legitimate.

Although plaintiff disagrees with the ALJ's review of the medical evidence, I must defer to the ALJ's interpretation if it is supported by the record. Batson, 359 F.3d at 1198. Here, the evidence is subject to more than one rational interpretation, and I find that the ALJ did not err in his consideration of Dr. Bohlman's opinion.

### 2) Opinion of Examining Psychologists

Plaintiff maintains that the ALJ did not adequately assess the findings and opinions of the psychologists of record. Plaintiff underwent four psychological evaluations between 2004 and 2009 and was consistently diagnosed with pain disorder with psychological factors, along with some form of depression, ranging from chronic moderate depression to major depressive mood disorder. Tr.

310, 317, 1048, 1065.

Dr. Richardson evaluated plaintiff in 2004, followed by Dr. Duvall in 2006, Dr. Slatick in 2007, and Dr. Richardson again in 2009. Tr. 305, 311, 1041, 1054. In reviewing these evaluations, the ALJ concluded:

> With the exception of the last psychological evaluation the claimant was not currently on any psychotropic medications. Interestingly when she was using medications, depression and tearfulness were improved. In combination the reports by Drs. Duvall and Slatick, as well as the credible portions of Dr. Richardson's, portray an individual that has limitations due to pain disorder, depressive disorder and personality disorder but with the appropriate restriction would still be capable of sustaining full time work. Her demonstrated difficulties interacting with others, whatever the source (irritability from pain or mental impairments, tendency to anger), are accounted for by restricting public, coworker, and supervisor contact to occasional. Interference from fatigue or depressive symptoms is accommodated by unskilled work which ordinarily involves dealing primarily with objects rather than data or people. Finally, the repeated compliant of difficulty understanding written materials is covered by the suggestion that she would perform best with verbal instructions.

Tr. 25 (citations omitted). Out of these four evaluations, only Dr. Richardson's second evaluation concluded that "until the psychiatric and physical conditions [of plaintiff] can be stabilized, full time employment is questionable." Tr. 1068. The ALJ found that this determination by Dr. Richardson in 2009 was not supported by the other evidence of record.

I find no error in the ALJ's evaluation of the examining psychologists. Plaintiff argues that the ALJ gave insufficient reasons to not adopt the opinions of the examining psychologists, yet only discusses the ALJ's partial rejection of Dr. Richardson's second evaluation. The ALJ described medical evidence regarding plaintiff's psychological condition in detail, including the diagnoses plaintiff received from Dr. Richardson in 2009 of bipolar disorder, panic disorder with agoraphobia, and obsessive compulsive disorder. Tr. 25, 1065-1066. The ALJ found that Dr. Richardson relied on plaintiff's self-reported symptoms in making these diagnoses, and that they were contradicted

by substantial evidence in the record. Tr. 25. The ALJ also noted apparent inconsistencies within the evaluation itself, in which Dr. Richardson admitted that plaintiff's "level of intellectual function appears to be in the average range and does not appear to be an obstacle to gainful employment,"and yet opined that her psychiatric and physical conditions made full-time employment questionable. Tr. 25.

Further, Dr. Richardson's second evaluation conflicts with the other evaluations. In his first evaluation, Dr. Richardson did not comment on plaintiff's ability to work. Dr. Duvall concluded the following: "[plaintiff] can pay attention, concentrate, learn and recall sufficiently to perform essential tasks. The difficulty she will have is with motivation, given that she regards herself as disabled from working." Tr. 319. Dr. Slatick did not conclude that plaintiff's conditions would prevent her from working, and instead identified a list of strategies that would be useful to plaintiff for purposes of career planning and securing employment Tr. 1048 Finally, the ALJ found Dr. Richardson's opinion of plaintiff's limitations inconsistent with that of non-examining state psychologist Bill Hennings, who stated that plaintiff was "capable of performing simple, routine tasks with occasional interaction," and with only moderate limitation in other specific abilities. Tr. 26, 338-355. Thus, the ALJ provided specific and legitimate reasons for rejecting Dr. Richardson's 2009 psychological evaluation. I find that the ALJ did not err in his consideration of the examining psychologists.

Plaintiff's disagreement with the ALJ's interpretation of the psychological evaluations does not prove legal error, because it was supported by substantial evidence. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. Cal. 2001).

///

13      - OPINION AND ORDER

## **CONCLUSION**

The ALJ's decision was based on proper legal standards and supported by substantial evidence in the record.  Accordingly, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this 5th day of October, 2012.

_____

Ann Aiken

United States District Judge

14      - OPINION AND ORDER